20462. WALKER *v.* THE STATE.

ARGUED MAY 11, 1959—DECIDED JUNE 5, 1959.

*Marion W. Corbitt, J. H. Phillips,* for plaintiff in error.

*R. F. Chance, Solicitor-General, Eugene Cook, Attorney-General, Rubye G. Jackson, Deputy Assistant Attorney-General,* contra.

WYATT, Presiding Justice. 1. In so far as the general grounds are concerned, it is contended, "that the State's evidence as to the cause of death is equally consistent with death by drowning as death by gunshot wounds, and since the indictment alleges death by shooting, with a pistol, then the State's evidence must prove death by gunshot wounds which the State's evidence did not prove beyond a reasonable doubt in this case. Therefore the court erred in not granting a new trial on the general grounds of his motion for new trial." The doctor who performed an autopsy on the body of the deceased testified: "The cause of

the death, in my opinion, was the gunshot wound in the left temple." He then explained in detail why, in his opinion, the cause of death was not drowning. In fact we find nothing in the brief of evidence to indicate that the cause of death was drowning. Since the evidence otherwise was amply sufficient to authorize the verdict, it follows there is no merit in the general grounds.

2. The first special ground complains because, over timely objection, an alleged written confession made by the defendant on trial, and by Marvin Walker, who was jointly indicted with the defendant, was allowed to go to the jury room to be considered by the jury during their deliberations. In *Shedden* v. *Stiles*, 121 *Ga.* 637 (4) (49 S. E. 719), the question presented was whether or not it was error to allow interrogatories to go to the jury room. It was there said: "Interrogatories, though read in evidence, should not be delivered to the jury. Where the court, over the objection of the party against whom the verdict was rendered, sent to the jury, after they had retired to deliberate as to their verdict, interrogatories which had been read in evidence and which were calculated to influence the jury in favor of the prevailing party, a new trial should have been granted." It was further stated in *Shedden* v. *Stiles* (p. 640): "The reason given for not allowing them to be delivered to the jury is, that the testimony which they contain, if read and reread by the jury, would have an unfair advantage over oral testimony of the other side, by speaking to the jury more than once." This is a full-bench decision.

In *Strickland* v. *State*, 167 *Ga.* 452 (6) (145 S. E. 879), also a full-bench decision, this court had under consideration whether or not it was error, over timely objection, to permit a dying declaration to go to the jury room. There this court said: "A dying declaration reduced to writing and signed by the deceased, and introduced in evidence by this State, should not have been sent by the court to the jury for their consideration while deliberating on the verdict which they should render, over the objection of the defendant; and permitting such declaration to go to the jury over the objection of the defendant requires the grant of a new trial."

■

*Royals* v. *State*, 208 *Ga.* 78 (65 S. E. 2d 158), is a case in which the identical question here presented was decided. There, with three dissents, this court held that the confession of the defendant and his coconspirator, the exact situation in the instant case, should not have been allowed to go to the jury room, and that to do so was reversible error. The majority opinion in the *Royals* case is based upon the full-bench opinions above cited. We are bound by the full-bench decisions of this court.

The facts contained in the alleged confession in the instant case had been testified to verbally by three officers. It was reversible error to allow the confession to go to the jury room.

3. The second special ground complains because two pistols were admitted in evidence over objection. Attached to the pistols was a written tag containing statements as to where the pistol came from and had the language: "Used By: Cecil Walker. Stole By: Marvin Walker. Charge Invest. c/w Homicide." It is argued that these tags were prejudicial and not admissible. The record discloses, however, that the only objection made at the time the pistols were offered was the following: "We object to the pistols on State's exhibits 25 and 26 on the grounds that they have not been shown to have any connection with the crime committed in this case; they are immaterial and prejudicial to the defendant." There was no objection except as to the introduction of the pistols themselves. There was no objection to the tags. The pistols had been sufficiently identified to make them admissible in evidence. Therefore, no error is shown in this assignment of error. Since the case is to be tried again, we should say that, had the tags been properly objected to, they would not have been admissible in evidence.

4. The third special ground complains about the admission in evidence of a lengthy excerpt from the testimony of Dr. Herman Jones. This witness had qualified as an expert, and was therefore competent to give his opinions about the matters contained in his testimony. There is no merit in this assignment of error.

5. Prior to the trial of this case, the plaintiff in error filed a petition in the superior court, in which he prayed that he

have access to certain documents, articles, and statements in the possession of the solicitor-general. The trial judge, upon a hearing, allowed the petitioner to have access to certain of the items set out in the petition and denied him access to others. Insofar as the judgment denied the petitioner access to the items in question, he excepts. The Constitution of Georgia as set out in Code (Ann.) § 2-105 provides what information or rights the defendant in criminal cases has under the circumstances here under consideration. That part of the Constitution provides as follows: "Every person charged with an offense against the laws of this State shall have the privilege and benefit of counsel; shall be furnished, on demand, with a copy of the accusation, and a list of the witnesses on whose testimony the charge against him is founded; shall have compulsory process to obtain the testimony of his own witnesses; shall be confronted with the witnesses testifying against him; and shall have a public and speedy trial by an impartial jury."

There is no law in Georgia that gives to the defendant in a criminal case the right to inspect the file of the solicitor-general before he is put on trial. The plaintiff in error relies in part on the provisions of Code §§ 38-1201 and 38-801. These Code sections deal with the right of either party in any case to have certain matter, upon proper notice, produced at the trial. They have no application to the question here under consideration. The judgment denying the plaintiff in error access to the evidence contained in the file of the solicitor-general was not error.

6. For the reasons stated in division 2 of this opinion, the judgment denying the plaintiff in error a new trial was error and must be reversed.

*Judgment reversed. All the Justices concur, except Duckworth, C. J., Candler and Hawkins, JJ., who dissent.*

DUCKWORTH, Chief Justice, dissenting. The majority I believe are making the mistake too often made by courts of relying upon decisions, sound upon their facts, but wholly inapplicable to the facts in the case being considered. They cite *Shedden* v. *Stiles*, 121 *Ga.* 637 (49 S. E. 719), and *Strickland* v. *State*, 167 *Ga.* 452 (6) (145 S. E. 879), and assert that, since

both have the concurrence of all six of the Justices, they are binding and controlling here. Neither of those cases involved papers signed by the person against whom they were introduced. The present case does involve such a signed paper, and I wonder how the majority avoids the plain law on such a document. The object of all legal investigation is the discovery of truth, and the rules of evidence are framed with a view to this end, seeking always for the highest and best evidence. Code § 38-101. Following this precept, Code § 38-205 reads as follows: "Written evidence is considered of higher proof than oral; and in all cases where the parties have reduced their contract, agreement, or stipulation to writing, and assented thereto, it is the best evidence of the same."

In the *Shedden* case, supra, the document sent out with the jury was interrogatories, which, as all lawyers know, are simply testimony of a witness that can be introduced upon the trial only to the extent of reading it to the jury. The document is not introduced or allowed as evidence. That opinion states that to let them go out would be to allow repetition and emphasis of the testimony. In the *Strickland* case, supra, the document which was held to have been erroneously allowed to go out with the jury was a signed dying declaration. This court discussed the reasons why interrogatories should not go out with the jury, citing among others the decision in the *Shedden* case, and at page 461 said: "The principle announced by this court in *Shedden* v. *Stiles*, supra, is equally applicable to depositions; and we reach the conclusion that under that decision it is improper to permit depositions to go to the jury, for the reason that they, as well as interrogatories, may unduly influence the jury in favor of the party introducing such evidence against the party whose testimony is entirely oral." Then the opinion continues: "Does the written statement of a dying declaration, signed by the deceased, fall within this rule? It has been held that such a statement is in effect a deposition, because the solemnity of the circumstances in which the dying declaration is made and the writing containing the declaration is signed by the deceased is equivalent to the oath of a party to a deposition." Thus we see where documents, not introduced as evi-

dence (interrogatories and depositions, and indeed inadmissible as evidence, but confined to being read in the hearing of the jury), were properly and soundly held in the *Shedden* case to be inadmissible, and that it was reversible error to allow them to go out with the jury. Then in the *Strickland* case that sound decision was stretched to apply to and control an entirely different factual case. The dying declaration there involved bore the signature of the deceased which, under all legal tests, was the highest and best evidence of what the deceased said where there was no rule requiring that it be read to the jury; yet, analogized to the interrogatories in the *Shedden* case and based thereon, it was ruled reversible error to allow it to go out with the jury. But this court plainly said that its ruling was predicated upon its construction that the solemnity with which it was executed amounted to an oath of the deceased. While I can not agree with the reasoning by which this court reached its conclusion that the dying declaration was analogous to interrogatories, I can see that it was solely because of that conclusion that it was held error to allow it to go out with the jury, and I assume that, but for such conclusion, it would not have been so held.

In *Smithwick* v. *State*, 199 *Ga.* 292 (10) (34 S. E. 2d 28), this court unanimously held that, where confessions were admitted in evidence and no later objections made to their going to the jury, it was not error to let them go out with the jury. In *Hall* v. *State*, 213 *Ga.* 557 (6) (100 S. E. 2d 176), we held, with all the Justices concurring in this holding, that any evidence that is introduced is properly sent out with the jury. The same ruling was also held in *Edwards* v. *State*, 213 *Ga.* 552, 554 (100 S. E. 2d 172). To the extent that this full-bench decision conflicts with the ruling in *Royals* v. *State*, 208 *Ga.* 78 (65 S. E. 2d 158), that confessions allowed in evidence were erroneously allowed to go out with the jury, it controls and constitutes an overruling of the ruling in the *Royals* case which was concurred in by only four Justices.

While it is true that this court in *Strickland* v. *State*, 167 *Ga.* 452, supra, held that the written dying declaration was properly admitted in evidence, yet the further ruling there that

it was error to allow it to go out with the jury because it was the equivalent of interrogatories shows that it was not introduced as evidence, but only that it was properly read to the jury as interrogatories are read. Thus neither is introduced as documentary evidence. Hence it is unrelated to the present case and all cases involving a written confession which is introduced as evidence solely for the consideration of the jury.

The majority in the present case can not claim any similar analogy of the signed confession here involved. There is neither the solemnity of an oath, as in the *Shedden* case, nor its equivalent as held in the *Strickland* case. Instead, it is simply the highest and best evidence since signed by the confessor of what he said. Code §§ 38-205, 38-302. No thinking person would accept for the truth what some witness testified that the defendant said rather than a writing expressing what he said bearing his own signature. In my opinion it is unfair to the decisions just discussed to extend to them meaning to cover the present case to which they bear scant, if any, similarity. I know of no rule of law that would exclude a signed written statement from evidence against the person signing it. If such a signed confession of crime is excluded from the jury, then why allow a signed deed, note, contract or receipt to go before a jury against the person signing it? This court is not only not bound by *Shedden* v. *Stiles,* 121 *Ga.* 637, supra, and *Strickland* v. *State,* 167 *Ga.* 452 (6), supra, as the majority says in this case, but those decisions constitute no legal justification for the majority ruling here.

I am authorized to state that Candler and Hawkins, JJ., concur in this dissent.