26508.   PASS v. THE STATE.

UNDERCOFLER, Justice. Edward Dean Pass was convicted of the murders of John P. Barnes and Nina F. Barnes and sentenced to death. He appeals to this court. *Held:*

1. We have carefully reviewed the evidence and find it sufficient to support the verdict. Enumerations of error numbers 1 and 25 are, therefore, without merit.

2. Enumeration of error number 2 contends that the trial court erred in refusing to accept appellant's plea of guilty to Count 2 of Indictment Number 11102, which charged the appellant with burglary of the house of John P. Barnes on November 28, 1969. "A plea of guilty is but a confession of guilt in open court and a waiver of trial. Like a confession out of court, it ought to be scanned with care and received with caution. The judge is not bound to receive such a plea at all, and in capital cases frequently declines to do so. . . The law favors a trial on the merits. *Gauldin v. Crawford,* 20 Ga. 674 (5). It does not encourage confessions of guilt, either in or out of court. . ." *Strickland v. State,* 199 Ga. 792, 800 (35 SE2d 463). This enumeration of error is without merit.

3. Enumeration of error number 3 contends that since the trial court erroneously refused the appellant's plea of guilty to Count 2 of the indictment charging him with burglary of the home of John P. Barnes, it was error to allow the defendant to

be prosecuted on Counts 1 and 2 of Indictment Number 11101 charging him with the murders of John P. Barnes and Nina F. Barnes respectively. The appellant bases this contention on *Code Ann.* § 26-506 (b) (c) which provides under multiple prosecutions for the same conduct: "(b) If the several crimes arising from the same conduct are known to the proper prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution except as provided in subsection (c). (c) When two or more crimes are charged as required by subsection (b), the court in the interest of justice may order that one or more of such charges be tried separately." Ga. L. 1968, pp. 1249, 1267.

This court construed these provisions of the 1968 Act in *Henderson v. State,* 227 Ga. 68, 76 (179 SE2d 76) where it said: "Formerly the judge had a discretion to order separate trials, but his discretion was abused if the separate counts involved different species of felonies or crimes of a different nature requiring different kinds of evidence to prove guilt. This test no longer need be applied. The only test under the new Criminal Code is whether the interests of justice will be served by ordering separate trials. The judge may order the charges tried separately but he is not required to do so if in his opinion the interests of justice will not be served thereby. We think the trial court in this case was justified under the facts of the case in concluding that the interests of justice would not be served by ordering separate trials."

Furthermore, the fact that the trial judge would not accept the guilty plea of the appellant for burglary of the house of John P. Barnes had no bearing at all on whether or not the appellant could be tried for the murders of John P. Barnes and Nina F. Barnes. This enumeration of error is without merit.

4. Enumeration of error number 4 contends that the trial court erred in sustaining the State's objection to the following question directed to a police officer by counsel for the appellant: "Now, then, sir, you state in this affidavit that on December 2, 1969, a responsible citizen informed you of certain facts. Was that responsible citizen named Eddie Anderson?"

The district attorney objected to the question and stated that the lives of the informants had been threatened and requested the court not to require the witness to name them.

In *Morgan v. State,* 211 Ga. 172, 177 (84 SE2d 365), this court held: *"Code* § 38-1102 provides that official persons shall not be called upon to disclose State matters of which the policy of the State requires concealment. In *Anderson v. State,* 72 Ga. App. 487 (4) (34 SE2d 110), it was held that ordinarily one who acts in the capacity of a peace officer will not be required to disclose the name of his informant concerning the crime for which the accused is being tried, and that such rule rests upon sound public policy. There was no error in the court's refusal to require the witness to disclose the name of the person who gave the information." See also *Scull v. State,* 122 Ga. App. 696, 700 (178 SE2d 720). This enumeration of error is without merit.

5. Enumeration of error number 5 contends that the trial court erred in denying the appellant's motion to suppress evidence because the issuing judge was not authorized to sign the search warrant. The appellant contends that two questions are raised by this enumeration of error: (1) Whether a judge can issue a warrant for a search in a county other than his own, and (2) Is a "pro hac" judge of the Municipal Court of Atlanta qualified to issue a search warrant?

(a) The record shows that the homicides were committed in the City of Atlanta in DeKalb County. The search warrant was issued by a pro hac judge of the Municipal Court of Atlanta while the judge was in Fulton County. We judicially know that the City of Atlanta is in the counties of Fulton and DeKalb. We hold, therefore, that a judge of the Municipal Court of Atlanta has authority to issue a search warrant for that portion of the City of Atlanta located in DeKalb County.

(b) In 1950 the charter of the City of Atlanta was amended and authorized the mayor of the city to appoint for the recorders' court a recorder pro hac vice "to properly expedite the business thereof, and while so acting such persons shall have all the powers of a recorder of said court." Ga. L. 1950, p. 2267. In 1952 the name of the Recorders' Court was changed to the Municipal Court of Atlanta and provision was made that the

recorders would be the judges of said court. "The judges and associate judges shall have the jurisdiction, powers and duties as now prescribed by law applicable to recorders and deputy recorders respectively." Ga. L. 1952, p. 2676.

*Code Ann.* § 69-705 provides that "All police court recorders and judges of all recorders' courts in this State shall have and are hereby given the same powers and authorities as ex-officio justices of the peace in the matter of and pertaining to criminal cases of whatever nature in the several courts of this State." Ga. L. 1935, p. 458. *Code* § 27-401 provides that a justice of the peace may hold a court of inquiry. *Code Ann.* § 27-303 provides that a search warrant may be issued by a judicial officer authorized to hold a court of inquiry. Ga. L. 1966, pp. 567, 568. See *Hall v. State,* 113 Ga. App. 587 (149 SE2d 175).

It follows that a judge pro hac vice of the Municipal Court of Atlanta is authorized to issue search warrants. This enumeration of error is without merit.

6. Enumeration of error number 6 contends that the trial court erred in overruling the appellant's motion to suppress tangible evidence. The appellant contends that the evidence was obtained as a result of an illegal search "because the search was general, because the warrant was issued without authority, because the affidavit supporting the warrant had not a measure of truth, and because the indications did not set forth a probable cause of the issuance of a warrant."

(a) We have held in the preceding division of this opinion that the judge pro hac vice of the Municipal Court of Atlanta had authority to issue the search warrant.

(b) The record shows that the evidence sought to be suppressed was obtained as a result of the search conducted under authority of the search warrant. The affidavit of the officer seeking the search warrant specifically described the place and automobile to be searched and the items sought to be recovered. The information contained in the search warrant was not within the officer's personal knowledge but was based on information furnished to him by an informant. The affidavit also shows that the informant was a responsible citizen who stated that on Friday, November 28, 1969, at 11:45 a.m., the appellant had asked

someone how it would feel to kill somebody and if it would bother him; that the appellant said he had killed two people who had walked in on him while he was burglarizing a house; that the appellant had in his possession a gold, heart-shaped locket containing a small color photograph of a white woman of young appearance with dark brownish hair; and that the officer and others made an independent investigation and corroborated the facts and circumstances given them by the informant. They also discovered that the appellant had a reputation as a burglar. The affidavit showed that the informant had given them reliable information in the past.

The affiant here showed ample facts to authorize the issuing magistrate to conclude that there was probable cause to believe that a crime of the nature set forth in the affidavits had been committed and that evidence of that crime would be produced by a search of the premises and automobile described in the affidavits. The fact that much of the affiant's information was derived from an informant would not vitiate the warrant. *Strauss v. Stynchcombe,* 224 Ga. 859 (2) (165 SE2d 302); *Campbell v. State,* 226 Ga. 883 (1) (178 SE2d 257).

(c) The fact that the police officers seized items not listed in the warrant did not render the search a general one or make it unlawful. *Code Ann.* § 27-303 (e) provides: ". . . when the peace officer is in the process of effecting a lawful search, nothing in this section shall be construed as precluding him from discovering or seizing any stolen or embezzled property, any item, substance, object, thing or matter the possession of which is unlawful, or any item, substance, object, thing or matter other than the private papers of any person which is tangible evidence of the commission of a crime against the laws of the State of Georgia." Ga. L. 1966, pp. 567, 568.

(d) "The factual inaccuracies in the affidavit complained of by the appellants do not destroy the otherwise adequate showing of probable cause because they are of peripheral relevance, and, not being the personal observations of the affiant, they do not reflect on his credibility." *Summerville v. State,* 226 Ga. 854 (1) (178 SE2d 162). On the hearing of the motion to suppress evidence, the testimony of the informant was consistent with the

material allegations in the affidavit. There is no merit in this enumeration of error.

7. Enumeration of error number 7 contends that the trial court erred in denying the appellant's motion to suppress intangible evidence relating to the alleged confession of the defendant made during an alleged illegal arrest.

*Code Ann.* § 27-313 provides: "(a) A defendant aggrieved by an unlawful search and seizure may move the court for the return of the property the possession of which is not otherwise unlawful and to suppress as evidence anything so obtained . . . (b) The motion shall be in writing and state facts showing wherein the search and seizure were unlawful." Ga. L. 1966, pp. 567, 571. In *Norrell v. State,* 116 Ga. App. 479, 488 (157 SE2d 784), it was held that under the express terms of this section "the only persons entitled to its benefit are persons 'aggrieved by an unlawful search and seizure.' No provision is made in this section for pre-trial suppression of evidence deemed illegal for reasons other than unlawful search and seizure. The motion to suppress here avers that the statements referred to were secured by police officers as a result of illegal arrests and detention, not as a result of an unlawful search and seizure. These statements should have been made the basis of objections at the trial and not the basis of a pre-trial motion. See United States v. Tuzzo, 9 FRD 466." There is no merit in this enumeration of error.

8. Enumeration of error number 8 contends that the trial court erred in refusing to allow the jurors to be placed upon their voir dire individually and outside the presence of each other upon appellant's timely demand. There is no merit in this contention. *Smith v. State,* 225 Ga. 328 (5) (168 SE2d 587).

9. Enumeration of error number 9 contends that the trial court erred in refusing to allow counsel for the appellant to question juror Hutchinson as to whether he could consider imposition of a life sentence in a murder case.

The record shows that the juror was asked: "Are you a firm believer in capital punishment? A. Only in certain circumstances—only in two circumstances I would say. Q. What are those circumstances, sir? A. Treason and premeditated murder.

Q. And do you feel that in either one of those two instances that that is the proper penalty for either treason or premeditated murder? A. Will you state that again? Q. I said do you feel like that in every case of treason and premeditated murder that the electric chair is the proper penalty for those two crimes?"

The district attorney objected to that line of questioning and the trial judge sustained the objection. Counsel for the defendant declined to ask the juror any other questions.

Since counsel for the appellant did not ask the juror whether he would consider the imposition of a life sentence in a murder case, this enumeration of error is without merit.

10. Enumeration of error number 10 contends that the trial court erred in disqualifying three jurors on the ground that they were opposed to capital punishment. By their answers to questions propounded by the court and the district attorney, the excluded jurors made it clear that they would under no circumstances imaginable impose capital punishment. Under Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776); *Whisman v. State,* 224 Ga. 793 (164 SE2d 719); *Johnson v. State,* 226 Ga. 511 (1) (175 SE2d 840); and *Hart v. State,* 227 Ga. 171, 176 (179 SE2d 346) the jurors were disqualified to sit as jurors in the trial of this case. There is no merit in this enumeration of error.

11. Enumeration of error number 11 contends that the trial court erred in overruling the appellant's challenge to the array and further erred in not granting a mistrial on its own motion after the following testimony was elicited from juror Braley by counsel for the defendant: "Well, I think the sheriff was sitting in the jury assembly room, and he mentioned that there was going to be a criminal case, and that they had a suspect and— or that they had apprehended someone for the Bennett or—I'm sorry. Q. Barnes? A. Barnes case. Q. How many other people in the assembly room heard the sheriff discussing the case, Mr. Braley? A. Oh, I think there was only about the last . . . well, the sheriff didn't really discuss the case, ma'am. He just said that there was a case and then he dropped it and that was it. I mean there was no discussion about it to any great length at

all. I believe there was the . . . all of the number seven panel."

Whether or not the challenge to the array of the jury was sufficient, the testimony of this juror only showed that the sheriff stated that there was going to be a criminal case for trial and that the State had a suspect. It was not improper for the person in charge of the jury to make such a statement of fact. There is no merit in this enumeration of error.

12. Enumerations of error numbers 14 and 21 contend that the trial court erred in refusing to allow counsel for the appellant to have access to a statement signed by Anderson Reed and Patricia Ann Dunn.

"There is no Georgia statute nor rule of practice which requires the district attorney to open his files to the attorney for the accused, nor is the accused entitled as a matter of right to receive copies of police reports and investigation reports made in the course of preparing the case against the client. *Walker v. State,* 215 Ga. 128, 130 (109 SE2d 748); *Blevins v. State,* 220 Ga. 720 (2) (141 SE2d 426); *Williams v. State,* 222 Ga. 208, 211 (149 SE2d 449); *Jones v. State,* 224 Ga 283, 284 (161 SE2d 302); *Brown v. State,* [224 Ga. 389, 390 (162 SE2d 349)]; *Holmes v. State,* 224 Ga. 553, 562 (163 SE2d 803)." *Henderson v. State,* 227 Ga. 68, 77, supra. There is no merit in these enumerations of error.

13. Enumeration of error number 15 contends that the trial court erred in refusing to allow counsel for the appellant to have the record or a portion thereof of a previous day's testimony of Anderson Reed read back for use in the cross examination of Anderson Reed.

There is no provision in the Georgia law requiring that a trial court have available during the trial a current transcript of the former day's proceedings. Whether or not the trial court will require the court reporter to read former testimony is a matter resting in his sound discretion. There is no merit in this enumeration of error.

14. Enumerations of error numbers 16 and 18 contend that the trial court erred in overruling the appellant's motions for mistrial on the ground that his character was introduced into

evidence as a result of the following questions and answers between the district attorney and Detective J. E. Taliaferro: "Q. Where did you first see him on the evening that you talked with him? A. Here in the DeKalb County jail . . . Q. What did you advise him of the rights that he might have? A. I advised him that he was suspected of the crime of burglary."

The general rule in this State is that "When one is on trial charged with the commission of a crime, proof of a distinct, independent, and separate offense is never admissible, unless there is some logical connection between the two, from which it can be said that the proof of the one tends to establish the other." *Fowler v. State,* 189 Ga. 733 (2) (8 SE2d 77). The appellant in this case was being interrogated about a burglary. There was a burglary committed in the home of the homicide victims and there was a logical connection between the two. There is no merit in these enumerations of error.

15. Enumeration of error number 17 contends that at a hearing outside the presence of the jury, the trial court erred in holding that the appellant's confession was freely and voluntarily made and that it should be admitted into evidence.

The record shows that the appellant was fully advised of his constitutional rights to counsel on several occasions, that he freely, voluntarily and knowingly waived counsel and gave the officers an oral statement about the homicides.

Before the appellant gave the officers his statement, he said he would tell them about the homicides after he saw his father because he wanted to tell his father why he did it. The appellant went with the officers to point out his father's home and, upon being so informed, the father followed them to the police station. The officers left the appellant in a room with his father because they wanted to pray. After a time, the appellant told the officers about the homicides in the presence of his wife and father. Although he would not sign a written statement, he told them he would "tell it just like I told you" in court. He did not at any time ask for a lawyer.

The appellant contends that his statement was not freely and voluntarily made and that he was beaten with his shoe. This was denied by the officers. The appellant contends that he was on

drugs and did not know what he was saying. The evidence shows that he talked rationally with the officers and asked them more questions than they asked him.

While the evidence was conflicting, it was sufficient to meet the requirements of Jackson v. Denno, 378 U. S. 368 (84 SC 1774, 12 LE2d 908, 1 ALR3d 1205); Escobedo v. Illinois, 378 U. S. 478 (84 SC 1758, 12 LE2d 977); and Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694, 10 ALR3d 974). There is no merit in this enumeration of error.

Contentions made in the trial court but not argued here in support of enumeration of error number 17 are considered abandoned.

16. Enumeration of error number 19 contends that the trial court erred in admitting into evidence over his objection a handkerchief and clothing seized at his apartment. The appellant argues that this evidence was never shown to be relevant to any issue in the trial and was highly prejudicial to the appellant since the handkerchief contained blood stains and implied that the stains could have been those of the victims.

The record shows that when the State offered the sack of clothing into evidence the appellant objected to its introduction because "this clothing was seized without any ground for its seizure, that the search and seizure itself was illegal and, further, on the ground that these items of clothing have in no way been shown to have any connection whatsoever with this case. They have merely been identified as being taken out of the defendant's house or . . ."

The evidence shows that the police officers had been informed that the appellant had on a certain type of clothing on the day he discussed the murder with an informant. The clothing was found in his apartment and seized by the police. We held in Division 5 of this opinion that the search warrant issued in this case was legal. There is no merit in this enumeration of error.

17. Enumeration of error number 22 contends that the trial court erred in failing to charge the jury on insanity and that they could acquit the appellant if they found him insane.

The evidence showed that the appellant was a person of low intel-

ligence but there is nothing in the record which indicates that he did not possess sufficient mind and reason to distinguish between right and wrong or that he was afflicted with any form of insanity or was otherwise incapable or incompetent to commit the crime of murder. *Chandler v. State,* 219 Ga. 105 (131 SE2d 762); *Ross v. State,* 217 Ga. 569, 577 (124 SE2d 280). There is no merit in this enumeration of error.

18. The trial court charged the jury as follows: "The defendant has set up an alibi as a defense in this case. An alibi as a defense involves the impossibility of the prisoner's presence at the scene of the offense at the time of its commission, and the range of the evidence in respect to time and place must be such as reasonably to exclude the possibility of presence. You would consider the question of alibi along with all the other evidence, and if a reasonable doubt be raised by the evidence as a whole, the doubt must be given in favor of innocence.

"Gentlemen, I charge you that a witness may be impeached by contradictory statements previously made by him or her as to matters relevant to his or her testimony and to the case. A witness may be impeached by disproving the facts testified to by him or her. When a witness shall be successfully contradicted as to a material matter, his or her credit as to other matters shall be for the jury, but if a witness shall swear wilfully and knowingly falsely, his or her testimony shall be disregarded entirely unless corroborated by circumstances or other unimpeached evidence. The credit of a witness is a matter to be determined by the jury under proper instructions of the court."

"Gentlemen, if you believe the contentions of the defendant, that is, that he was not at this place, that he had nothing to do with the killing of the Barneses, he got the rings from someone else, he had nothing to do with this killing, if you believe his alibi that it was not possible for him to be there, it would be your duty to acquit."

The appellant contends that the last paragraph of the charge was erroneous because it required the defendant to "meet some standard of proof." We do not agree. In our opinion this charge does not involve the degree of proof which would be necessary to convict a defendant but was a continuation of the judge's

charge on the credibility of witnesses. It follows that the cases of *Chaffin v. State*, 225 Ga. 602 (170 SE2d 426); *Young v. State*, 225 Ga. 255, 258 (167 SE2d 586); and *Thornton v. State*, 226 Ga. 837 (3) (178 SE2d 193) have no bearing on this charge. This enumeration of error is without merit.

19. *Code Ann.* § 26-1101 (c) provides: "A person convicted of murder shall be punished by death or by imprisonment for life." Ga. L. 1968, pp. 1249, 1276.

*Code Ann.* § 26-3102 provides: "Where, upon a trial by jury, a person is convicted of an offense which may be punishable by death, a sentence of death shall not be imposed unless the jury verdict includes a recommendation that such sentence be imposed. Where a recommendation of death is made, the court shall sentence the defendant to death. Where a sentence of death is not recommended by the jury, the court shall sentence the defendant to imprisonment as provided by law. Unless the jury trying the case recommends the death sentence in its verdict, the court shall not sentence the defendant to death." Ga. L. 1961, pp. 1249, 1335; 1969, p. 809.

Enumeration of error number 24 contends that the trial court erred in charging the jury that if they found the defendant guilty: "The form of your verdict would be, we, the jury, find the defendant guilty, and you would have two things that you could do. You must go further in either case. If you decide the defendant should die, you would say, 'We, the jury, find the defendant guilty and fix his punishment at death,' or, if, for no reason at all but simply because you wish to, you could do otherwise and say, 'We, the jury, find the defendant guilty and fix his punishment at life imprisonment.'"

The appellant contends that under the Act of 1968 the jury might sentence one to life imprisonment as readily as to death and that the trial court committed reversible error in charging the jury that they could sentence the defendant to life imprisonment "for no reason at all but simply because you wish to" because this implied that the death sentence was preferable.

We do not agree with this contention. The trial court charged substantially the law on the punishment for the crime of murder and it was favorable to the appellant that he charged the jury

that they could sentence him to life imprisonment "for no reason at all but simply because you wish to." Compare *Williams v. State*, 226 Ga. 140 (2) (173 SE2d 182).

20. The other enumerations of error were expressly abandoned by the appellant.

*Judgment affirmed. All the Justices concur.*

ARGUED MAY 10, 1971—DECIDED JUNE 2, 1971—
REHEARING DENIED JUNE 17, 1971 AND JULY 9, 1971.

*Victoria D. Little, J. W. Moulton,* for appellant.

*Richard Bell,* District Attorney, *Eugene Highsmith, Arthur K. Bolton,* Attorney General, *Harold N. Hill, Jr.,* Executive Assistant Attorney General, *Courtney Wilder Stanton, Mathew Robins,* Assistant Attorneys General, for appellee.

